IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                              PLAINTIFF

V.                            CASE NO. 5:18-CR-50080

ROBERT PEELER                                                        DEFENDANT

## ORDER

Now pending before the Court is Defendant Robert Peeler's Renewed Motion for Early Termination of Supervised Release (Doc. 55). The Government advises that it continues to oppose early termination and restates all the same arguments raised in the previous Response (Doc. 51).

On February 25, 2022, the Court denied Mr. Peeler's initial motion for early termination without prejudice to his ability to renew his request once he had served at least half his term of supervised release. *See* Doc. 54. That halfway point occurred on May 24, 2022. The United States Probation Office has no objection to early termination and advises that Mr. Peeler has been compliant with all terms of supervised release, has paid his entire financial penalty, and currently resides in the Southern District of Indiana, where he lives near his family and has secured a good job.

Mr. Peeler pleaded guilty in this Court to one count of possession with intent to distribute heroin. He was 29 years old at the time. On April 19, 2019, the Court sentenced him to 27 months in prison followed by a period of 3 years of supervised release, a fine of $12,500.00, and a special assessment of $100.00. (Doc. 46). He was released from the Bureau of Prisons on November 24, 2020, and has now completed approximately 19 months of his 36-month term of supervised release.

1

The Government correctly states that supervised release is part of a defendant's total punishment. Supervised release helps protect society from those who might seek to reoffend. Supervised release also provides important tools to defendants as they reintegrate into the community after prison. Because supervised release is so beneficial—indeed, necessary, in most cases this Court sees—it is unusual for a court to grant a request for early termination. Mere compliance with the terms of supervised release is, as a rule, not enough to warrant early termination. However, according to 18 U.S.C. § 3583(e)(1), "if [a court] is satisfied that [early termination] is warranted by the conduct of the defendant released and the interest of justice," the Court may take such action, provided that the defendant completed at least one year of supervised release and the court considered all the factors at 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). The Court enjoys "broad discretion" when deciding when a term of supervised release should be terminated. *United States v. Davies*, 380 F.3d 329, 332 (8th Cir. 2004).

Mr. Peeler acknowledges in his Renewed Motion that requests for early termination are very rarely granted by this Court. However, he points out that his personal circumstances are not typical—and for the reasons explained below, the Court agrees.

Mr. Peeler is a recovering drug addict who has interacted with the criminal justice system from an early age. At 16 years old, he was convicted of possessing a firearm; it seems he purchased a weapon from another high school student and hid it under the driver's seat of his car while parked at school. (Doc. 40, p. 8). Also at age 16, he suffered a serious accident and severed the tendons in his hand. *Id.* at p. 12. He was prescribed oxycodone and other pain relievers after hand surgery, and he began abusing his pain

2

medications. *Id.* At age 17, he was convicted of aggressive and reckless driving. *Id.* at p. 8. Soon after, he went to college at Indiana University and graduated with a degree in business; however, the specter of drug abuse was always lurking, even while he was away at school. Mr. Peeler continued to abuse illegal drugs throughout college and graduated to cocaine and heroin. *Id.* at p. 12. At age 21, he ostensibly hit rock bottom when he was arrested after passing out in a gas station, covered with blood and with needle tracks lining his arms. *Id.* at p. 8. He then entered drug treatment and moved to Arkansas for a fresh start working with his uncle. For a period of years, Mr. Peeler was sober and did well. *Id.* at p. 13. But at age 28, he became addicted to pain medication again, which led him back to heroin. When this Court encountered Mr. Peeler, he had once again hit rock bottom: He was a heroin dealer with multiple customers throughout Northwest Arkansas.

At the time of sentencing, the Government argued persuasively that Mr. Peeler's Guideline sentencing range of 12 to 18 months was too low and did not reflect the seriousness of his offense conduct—nor the fact that he had yet to experience any meaningful punishment for his many prior run-ins with the law. The Court granted the Government's motion for an upward variance—a rare event in itself—and committed Mr. Peeler to the Bureau of Prisons for 27 months.

In the Court's experience, those with serious addiction problems such as Mr. Peeler often relapse. They often reassociate with those who were part of their lives before prison, and, slowly but surely, they return to their old ways. Of course, many do turn their lives around and find long-term sobriety, but the path is often a dark and difficult one, and many defendants do not navigate it successfully. Mr. Peeler, it seems, has taken his life

firmly in his hands and walked the hard road of sobriety. He did not, as the Government suggests, merely comply with the terms of supervised release. After his release from prison, he took active steps to better himself and avoid returning to a life of addiction and crime. He moved back to Indiana to live with his mother, and he immediately secured a job. He paid the entirety of his $12,600.00 financial penalty within the first year of supervised release. He enrolled in anger management and substance abuse counseling and currently sees a therapist. *See* Doc. 49-1. He reports in a well-written and candid letter to the Court that he took advantage of his time in prison by seeking out drug counseling and support, taking classes, and reading. *See* Doc. 49-3. He deleted all his old contacts from his phone, joined Narcotic Anonymous, and reconnected with a former mentor, who offered him a job as Sales Manager of North America for an Indianapolis-based company called AirWave Packaging. According to Mr. Peeler, he has "thrived in this position and could not be happier with [his] life." *Id.*

The Court has independently confirmed Mr. Peeler's claim that his employer's parent company is based in Germany and has clients all over the world. *See* https://www.airwave-packaging.com/ (last accessed June 17, 2022). Mr. Peeler explains that he has been forced to decline meetings with new international customers because it is exceedingly difficult for him to travel internationally, given his probation status. The president of Mr. Peeler's company also writes to the Court of his confidence in Mr. Peeler's abilities and notes: "For Rob to fully carry out the scope of his position with AirWave Packaging, he needs the ability to travel to Canada and Mexico to support our customers and to continue to enable our own growth." (Doc. 55-1).

4

Having analyzed the relevant § 3553 factors noted above, the Court concludes that Mr. Peeler's sentence of imprisonment, plus the 19 months he served on supervised release, adequately reflect the seriousness of his underlying offense, provide adequate deterrence to himself and others, and provide just punishment. The Court further finds that Mr. Peeler no longer presents a threat of danger to the public. A recovering drug addict's sobriety is, of course, not guaranteed, but Mr. Peeler has persuaded the Court that he is serious about his sobriety and will not return to a life of addiction and crime. Finally, given Mr. Peeler's unique sales job and requirement of international travel for that job, the interests of justice would not be served by requiring him to finish the remainder of his term of supervised release. Mr. Peeler poses no appreciable risk of reoffending and appears to have been rehabilitated.

**IT IS THEREFORE ORDERED** that the Renewed Motion for Early Termination of Supervised Release (Doc. 55) is **GRANTED**.

**IT IS SO ORDERED** on this ___21st___ day of June, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE